## UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF WEST VIRGINIA

FILED

MAR 1 1 2014

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

Harry W. Moore

                    Plaintiff

v.                                CIVIL ACTION NO.: 5:14cv 33
                                                (Bailey)

Robert W. Kagler, personally and as Deputy
Commissioner of Delinquent and Non-Entered
Lands of Marshall County, West Virginia,
Marshall County Commission, a political subdivision,
Hayhurst Company, a Florida Partnership,
Ronald Hayhurst, personally and as President
of Hayhurst Company and President of
Chestnut Holdings, Inc., a Florida holding
company; Chestnut Holdings, Inc., a Florida
holding company and the State of West Virginia.

                    Defendants.

### COMPLAINT

For his complaint, the plaintiff Harry Moore states as follows:

### Jurisdiction and Venue

1.  The plaintiff, Harry W. Moore is an Eighty- (84) year old gentleman who is a citizen and resident of Marshall County, West Virginia.

2.  Other than six or eight months in Wheeling and four (4) years in college at West Virginia University, the plaintiff has lived in Marshall County his entire life.  He is a life-long citizen of West Virginia.

3.  Hayhurst Company is a Florida general partnership, and upon information and belief, maintains its principal place of business at 14441 Windchime Lane, Orlando, Florida 32837.

4.  Chestnut Holdings, Inc. (hereinafter "Chestnut"), is a Florida corporation with its principal place of business being the same as defendant Hayhurst's with a local office in West Virginia at 57 Mountain Park Drive, Fairmont, West Virginia 26555.

5. Chestnut Holdings, Inc. maintains a local office in Fairmont, West Virginia and Hayhurst Company maintains the same local West Virginia office.

6. Upon information and belief, Hayhurst Company is an affiliate of Chestnut Holdings, Inc.

7. Tri-County Oil and Gas is also located at 57 Mountain Park Drive in Fairmont, West Virginia.

8. Ronald Hayhurst is the owner and president of Hayhurst Company, Chestnut Holdings, Inc. and Tri-County Oil and Gas and operates all three entities from the same Fairmont, West Virginia location.

9. Robert W. Kagler is and was at all times relevant to this complaint, a West Virginia citizen residing in Ohio County, West Virginia at 659 National Road, Wheeling, West Virginia 26003-6542.

10. Robert W. Kagler was during a portion of the time relevant to this complaint, acting as Deputy Commissioner for the Marshall County Commission's Office of Delinquent and Non-Entered lands (hereinafter "Marshall County") until he was dismissed for misappropriation of estate funds for which he was acting in a fiduciary capacity.

11. As a result of his dismissal, upon removal of defendant Kagler as Deputy Commissioner, during the time period relevant to this complaint, G. Russell Rollyson of the West Virginia Auditor's Office, (hereinafter "State Auditor"), acting within the scope of his employment for the state of West Virginia, began acting as Deputy Commissioner for the Marshall County.

12. The Marshall County Commission of Delinquent and Non-Entered lands is a political subdivision as defined by the West Virginia Code.

13. The State of West Virginia is a sovereign, political entity, and the West Virginia Auditor's Office is a constitutional office which among other things, issues deeds to realty and mineral interests sold at County Commission sales in West Virginia for unpaid taxes. *See* W. Va. Code §11A-3-44-55 and W. Va. Code §11A-4-1 et. seq.

14. The State of West Virginia through its branches of government and political subdivisions is among other things in the business of selling land belonging to West Virginia citizens for nonpayment of taxes, revoking lawyer licensing for misconduct and passing legislative enactments.

15. The State of West Virginia maintains an agency relationship with its constitutional officers, county commissions, the Lawyer Disciplinary Board and with the employees of each of them.

16. For purposes of this complaint and the facts and causes of action asserted herein, Hayhurst Company, Deputy Kagler and Deputy Rollyson were employees of the State of West Virginia and state actors as defined by federal law.

17. The Court has jurisdiction and venue over this matter as the majority of conduct, breaches of duties, concealments, negligence and/or fraudulent activity occurred in the Northern District of West Virginia.

18. The land and mineral interests at issue are located in Marshall County, West Virginia.

19. The land and mineral interests were purchased in Marshall County, West Virginia from the Marshall County Commission in 2003.

20. The District Court has subject matter jurisdiction over claims arise under the United States Constitution and federal enactments. Specifically, this Court has maintains subject matter jurisdiction over claims asserted for (1) deprivation of the plaintiff's constitutional rights as

provided by Article Fourteen of the United States Constitution pursuant to sections 1983 and 1988 of Chapter 42 of the United States Code; (2) mail fraud pursuant to sections 1341 and 1346 of Chapter 18 of the United States Code; (3) wire fraud pursuant to sections 1343 and 1346 of Chapter 18 of the United States Code; and for racketeering activities pursuant to section 1962 of Chapter 18 of the United States Code.

## General Facts

21. The plaintiff realleges and reaffirms allegations (1) through (20) as though the same were stated verbatim herein.

22. On January 24, 1965, Everett F. Moore died, and his estate was devised according to his will.

23. Everett Moore left the residual of his estate to his five nieces and nephews by name in his will.  The plaintiff, Harry W. Moore is listed by name as an inheriting nephew.

24. Included in the residual estate after specific bequeaths and conveyances made long ago, were several realty and mineral right interests which were inherited by the five named nieces and nephews.

25. Upon information and belief, prior to the discovery of Marcellus shale located in Marshall County, West Virginia, Marshall County did not assess taxes against oil and gas estates unless and until the gas or minerals were actually located and produced.

26. The heirs, Mary Jane Nesbitt and Sally Caudill transferred their ownership interests to the plaintiff by deeds which were recorded in the office of the Marshall County Commission on October 30, 1997.

27. The heir, Edward Moore transferred his ownership interests to the plaintiff by deed which was recorded in the office of the Marshall County Commission on September 24, 1998.

28. The remaining heir, Becky Reese Hill, daughter of Sue Bryson Reese, transferred her ownership interest to the plaintiff by deed which was recorded in the office of the Marshall County Commission on September 30, 2004.

29. Around the turn of this century, advances in high volume hydraulic fracturing advanced the development of natural gas contained within Marcellus shale.  It became known in the oil and gas industry that vast Marcellus shale deposits exist between Ohio and Pennsylvania and include Marshall County, West Virginia.

30. At some point during this same time period, defendant Kagler came under investigation by the State of West Virginia by the Lawyer Disciplinary Board for fiduciary improprieties.

31. Likewise during this time period and sometime prior to and/or during the year 2003, defendant Kagler, in his position as Deputy Commissioner and while acting within the scope of his employment with Marshall County and as an agent of the state of West Virginia, began identifying mineral rights which belonged to the residents of Marshall County, West Virginia.

32. Defendant Kagler identified oil and gas holdings on behalf of and as agent for Ronald Hayhurst and his companies.

33. A parcel of land inherited by the plaintiff was identified as delinquent on taxes.

34. Neither Marshall County through Deputy Kagler nor the sheriff provided notice to the plaintiff of the delinquency.

35. Upon information and belief, notice of the delinquency was not published in the Moundsville Echo.

36. The property was sold to Tri-County Oil & Gas, a company owned and operated by the defendant, Ronald Hayhurst.

37. Because Marshall County through defendant Kagler or the Sheriff of Marshall County did cause notice of the tax sale to be printed in the Moundsville Echo, the plaintiff became aware that the property had been sold for delinquent taxes.

38. At a cost of more than Two Thousand Dollars ($2,000.00), the plaintiff redeemed the property sold to the defendant's company.

39. Defendant Kagler is acquainted with and knows Harry Moore and his son, Harry Moore Jr. (hereinafter referred to as "Jr.").

40. Defendant Kagler had knowledge that the taxes were paid by Harry Moore because Jr. had many conversations with defendant Kagler during this period of time and specifically spoke with defendant Kagler about the land sale upon publication.

41. During this conversation, defendant Kagler remarked to Jr. that he "is very familiar with the Everett Moore estate."  However, while acting in his capacity as Deputy Commissioner and as an agent for Ronald Hayhurst and his companies, defendant Kagler failed to inform Jr. that most, if not all of his elderly father's oil and gas interests had also been sold to the defendant Ronald Hayhurst's company, Hayhurst Company.

42. Included in those interests sold are:

   A. 937 acres of oil and gas rights which was sold at tax sale on February 4, 2003 with the date of redemption being March 12, 2004;

   B. 6 acres of oil and gas rights which was sold on December 10, 2003 with a redemption date of March 31, 2004;

   C. 16 acres of oil and gas rights which was sold on December 10, 2003 with a redemption date of March 31, 2004;

D.  16 acres of real property was sold on December 10, 2003 with a redemption date of March 31, 2004;

E.  4.79 acres of oil and gas rights which was sold on December 10, 2003 with a redemption date of March 31, 2004;

F.  ½ int. 10 acres of oil and gas rights which was sold on December 10, 2003 with a redemption date of March 12, 2004;

G.  53 acres of oil and gas rights which was sold on February 4, 2003 with a redemption date of March 12, 2004;

H.  5 acres of real property sold on December 10, 2003 with a redemption date of March 31, 2004;

I.  5/28 int. in 100 acres with an oil and gas well, numbered 1288 with a redemption date of March 31, 2003;

J.  90 acres oil and gas with a manufactures lease 2853, well number 1288;

43. Upon information and belief, the defendants also sold the plaintiff's three remaining interests in oil and gas:

K.  202 acres oil and gas, well numbers 629-630, Natural Gas of West Virginia;

L.  9.0436 acres oil and gas royalty; and

M.  2 1/4 acres oil and gas royalty.

44. Thus, the Marshall County assessor at the direction of defendant Kagler, as Deputy Commissioner of Marshall County, caused to be assessed and did assess a miniscule tax to each oil and gas interest identified by him.

45. The tax assessed was in the following minimal amounts: One dollar ($1.00) for each of the oil, gas and realty interests and twenty dollars ($20.00) each for two (2) of the large tracts of

oil and gas.  For five years taxes due on 1,237.79 of the acres owned by the plaintiff, the

assessor, the Marshall County Commission and Deputy Kagler assessed only Twenty-Six

Dollars ($27.00) of tax.  Thus, the tax assessed was less than one cent ($.0004) per acre.

46. If the property interests were even given sufficient time after assessment to become

delinquent, notice of delinquency was not provided to the plaintiff or Ms. Hill, the true

owners.

47. Upon information and belief, if the Sheriff, Marshall County and/or Deputy Kagler sent tax

tickets to anyone, they were sent to a former owner who did not provide them to the plaintiff

and Ms. Hill. However, it is plaintiff's belief that no one received a tax ticket for any of the

identified properties; rather, that as hereinafter alleged, the properties were sold by Marshall

County and defendant Kagler forthwith either at the Deputy Commissioner auction or in the

guise of a Deputy Commissioner auction.

48. Although the Sheriff or Marshall County through defendant Kagler caused to have a

redemption notice printed in the Moundsville Echo when real property owned by the plaintiff

was sold in 2003, defendant Kagler and Marshall County failed to have notice printed in the

Echo of even one of the oil and gas interests sold.

49. According to the notices filed in the records of the County Commission, the plaintiff's oil

and gas interests were sold by defendant Kagler and Deputy Rollyson at auction pursuant to

the provisions set forth in Chapter 11A-3-44 through 55.

50. The West Virginia Code provides that notice of the deputy commissioner sale is to be

published in the newspaper three times.  W. Va. Code §11A-3-46.

51. However, Article 3 of Chapter 11A providers that plaintiff's property interests must have

been offered at tax sale by the sheriff prior to auction, and delinquency of plaintiff's property

interests prior to the sale must be published.  W. Va. Code §11A-3-2; W. Va. Code §11A-3-9 and W. Va. Code §11A-3-44 .

52. Accordingly, without providing notice to the plaintiff either directly or indirectly, Marshall County and the State sold the plaintiff's property interests to defendant Hayhurst Company at two separate tax sales.

53. Upon information and belief, defendant Kagler, on behalf of Hayhurst Company, either bid on the plaintiff's property interests at the auctions for Hayhurst or listed Hayhurst Company as buyer without actually placing the interests up for bid at auction.

54. The first auction occurred on February 4, 2003 while defendant Kagler was still Deputy Commissioner.

55. However, on July 2, 2003, the West Virginia Supreme Court on recommendation of the West Virginia Lawyer Disciplinary Board annulled defendant Kagler's license to practice law for misappropriating funds as a fiduciary of an estate.

56.  State Auditor Rollyson acting within the scope of his employment as Marshall County Deputy Commissioner on behalf of and as agent of the State of West Virginia, relied on the actions of defendant Kagler, despite the revelation of unprofessional conduct and fiduciary indiscretions and the annulment of his law license by the State of West Virginia, and issued deeds to Hayhurst Company for the property rights identified and/or sold by Deputy Kagler.

57. The second tax sale occurred after defendant Kagler's removal as Deputy Commissioner, but upon information and belief, defendant Kagler remained working for Hayhurst Company thereafter as either an employee or independent contractor.

58. Upon information and belief, defendant Kagler conducted the search of the records on behalf of Hayhurst Company while appointed as Deputy Commissioner and thereafter. *See* W. Va. Code §11A-3-52 record search requirement.

59. Upon information and belief, defendant Kagler was paid by Hayhurst Company for conducting the search of the records while Deputy Commissioner and thereafter.

60. The current market value of the acreage taken from the plaintiff is between Three Thousand ($3,000.00) and Five Thousand Dollars ($5,000.00) per acre for surface acres and mineral right acres.  The number of acres owned by the plaintiff and found thus far to have been sold by the defendants without notice and without the plaintiff's knowledge is 1,293.9836 acres. Upon information and belief, the defendants also sold the plaintiff's remaining mineral interests in coal which total 140.297 as set forth in the appraisement of the estate of Everett Moore for a total of 1,434.2806 acres sold without publication or delivery of notice.

61. The total value of the property wrongfully taken from the plaintiff is between Four Million, Three Hundred and Two Thousand, Eight Hundred and Forty-One Dollars and Eighty Cents ($4,302,841.80) and Seven Million, One Hundred and Seventy-One Thousand, Four Hundred and Three Dollars ($7,171,403.00).

62. At or about the same time as the plaintiff was denied notice of his right to redeem, Deputy Kagler caused notice to be published in the Moundsville Echo for other properties which were sold for delinquent taxes on February 4, 2003.

63. February 4, 2003 is the same date that two largest parcels of the plaintiff's oil and gas property were sold without notice.

64. Hayhurst Company did not list or identify either of the true owners of the property interests for notification of their right of redemption.

65. Defendant Kagler, as the person conducting the record search on behalf of Hayhurst failed to list or identify either of the true owners of the property interests for notification of their right of redemption.

66. Instead, defendants Hayhurst and Kagler identified Edward Moore, a former owner with a history of failing to pay the taxes and failing to provide notice to the other heirs about the tax.

67. Most, if not all of the plaintiff's property which was taken without notice by defendants Kagler and Hayhurst were transferred by deed to defendant Chestnut Holdings, Inc.

68. Defendants Hayhurst and Chestnut are the same entity, and Chestnut is therefore liable for the actions of Hayhurst Company and Ronald Hayhurst.


## COUNT ONE: Denial of United States Constitutional Due Process Protection

69. The Plaintiff realleges and reaffirms the allegations contained in paragraphs (1) through (68) as if the same were set forth verbatim herein.

70. Ronald Hayhurst, as owner of Hayhurst Company and Hayhurst Company, as the tax lien purchaser, maintain a duty under Chapter 11A of the West Virginia Code to conduct a reasonably diligent search of the Marshall County records and provide Marshall County with a list of all persons entitled to notice, including all owners.

71. The Marshall County records established the plaintiff as an owner of all of his property interests sold by Marshall County without notice.

72. The Hayhurst defendants did not conduct a reasonably diligent search of the Marshall County Commission records or it would have found the will and deeds placing ownership of the properties in the plaintiff.

73. Defendant Kagler, as the person searching the record on behalf of the Hayhurst defendants maintained a duty under Chapter 11A of the West Virginia Code to conduct a reasonably diligent search of the Marshall County records.

74. Defendant Kagler, as the person searching the record on behalf of the Hayhurst defendants did not conduct a reasonably diligent search of the Marshall County records.

75. Defendant Kagler, as agent for Marshall County and the State, having actual knowledge of the plaintiff and his ownership, had a fiduciary duty to list the plaintiff as owner or to correct the Hayhurst defendants' list of those entitled to notice, and failing to act in spite of his actual knowledge was a breach of his fiduciary duty.

76. Defendant Kagler, as Deputy Commissioner maintained a duty to publish the notice of sale and right to redeem in the Moundsville Echo.

77. Defendant Kagler, as Deputy Commissioner did not publish or cause to be published the notice of sale and right of redemption of the plaintiff's property.

78. The Due Process requirements of the United States Constitution require defendants Hayhurst and Kagler, as an agent of the Hayhurst defendants and as having conducted the record search, to conduct a reasonably diligent search of the Marshall County Commission records.

79. The defendants, Hayhurst, Hayhurst Company and Kagler failed to conduct a reasonably diligent search of the public record by failing to identify the true owners of the property interests.

80. The defendants, Hayhurst, Hayhurst Company and Kagler failed in their duties and violated the plaintiff's U. S. Constitutional due process rights by failing to provide Plaintiff with direct certified notice.

81. The defendants, Hayhurst, Hayhurst Company and Kagler failed in their duties and violated the plaintiff's U. S. Constitutional due process rights by failing to provide Plaintiff with notice by publication.

82. Upon information and belief, defendant Kagler would not have received any money from Hayhurst had the property tax been paid or the property redeemed.

83. Had the property been redeemed, the Hayhurst defendants could not have retained nearly Fifteen Hundred acres of oil and gas for which they paid less than a cent per acre.

84. The Hayhurst defendants and defendant Kagler intentionally failed to identify the plaintiff as owner of the property, intentionally failed to provide certified notice and intentionally failed to publish notice in the paper in order to keep the plaintiff from discovering that his property interests had been sold.

85. The Hayhurst defendants and defendant Kagler negligently failed to identify the plaintiff as owner of the property, negligently failed to provide certified notice and negligently failed to publish notice in the paper in order to keep the plaintiff from discovering that his property interests had been sold.

86. The failure of defendants Hayhurst and defendant Kagler as agent for Hayhurst, to conduct a reasonably diligent search of the record and to provide notice to the plaintiff of his right to redeem is a breach of the duties set forth in articles 3 and 4 of the West Virginia Code and amounts to a denial of plaintiff's constitutional due process rights as established by the federal courts.

87. As a direct and proximate result of the defendants' negligent or intentional breach of their duties as set forth in articles 3 and 4 of Chapter 11A of the West Virginia Code, the plaintiff

was damaged by the loss of his property, the average value of which exceeds Four Million Dollars.

88. Because the deeds placing 4/5s ownership in plaintiff had been properly contained on and in the records of the Marshall County Commission for nine to ten years prior to any search conducted by the Hayhurst defendants and their agent, defendant Kagler, it is undeniable that the defendants breached the duties required of them in Chapter Eleven-A of the West Virginia Code, and as such, it is undeniable that the plaintiff's property was taken without due process of law as required by the United States Constitution.

89. Such failure and breach of duty directly and proximately resulted in the taking of plaintiff's property interests without due process of law.

90. Defendants Hayhurst, Hayhurst Company and Kagler's conduct as described in this complaint was intended to enrich themselves by stealing from the plaintiff.

91. Defendants Hayhurst, Hayhurst Company and Kagler's conduct as described in this complaint is not justifiable by any governmental interest.

92. The actions of the defendants in their capacities as state actors in identifying property interests to be sold without notice were so arbitrary and irrational, so unjustified by any circumstance or governmental interest, that plaintiff was incapable of avoiding the resulting sale because their conduct removed all pre-deprivation procedural protections.

93. The actions taken by defendants Hayhurst, Hayhurst Company and Kagler in furtherance of their scheme to defraud are so outrageous as to shock the conscience.

94. The defendant's actions are in violation of the plaintiff's substantive and procedural federal due process rights.

95. The defendants actions constitute a violation of 42 U.S.C. §1983 and 42 U.S.C §1988.

96. West Virginia Code Section 11A-4-3 limits a citizen's ability to bring an action to set aside a deed that was improperly obtained to three (3) years, and the West Virginia Supreme Court of Appeals has upheld the limitation as not being an impingement to West Virginia due process rights.

97. As a result of the West Virginia three (3) year statute of limitations, no adequate state remedy exists for the plaintiff who only recently discovered that his property interests had been sold.

98. Whereas here, the tax lien purchaser, defendants, Ronald Hayhurst and Hayhurst Company, by and through their agent, defendant Kagler, whether negligently or intentionally, fail to comply with the notice provisions contained with articles 3 and 4 of Chapter 11A, application of the three (3) year statute of limitation results in an unconstitutional deprivation of the plaintiff's due process rights guaranteed by Article Fourteen (14) of the United States Constitution.

99. The United States District Courts in West Virginia and the Fourth Circuit Court of Appeals have consistently repeated that Article 14 of the Unites States Constitution requires notice to be given to a property owner before divesting him/her of his/her property.

100. Because Section 4(a) of article 4 of Chapter 11A of the West Virginia Code results in deprivation of the United States Constitutional right to notice, where no notice is provided, application of the legislatively created limitation results in violation of the United States Constitution.

101. Section 4(a) of article 4 of Chapter 11A of the West Virginia Code is an unconstitutional enactment by the West Virginia Legislature and therefore, the State of West Virginia is subject to the provisions set forth in 42 U.S.C. §1983.

## **COUNT TWO: Mail Fraud**

102.     The Plaintiff realleges and reaffirms the allegations contained in paragraphs (1) through

(101) as if the same were set forth verbatim herein.

103.     While in his capacity as Deputy Commissioner, defendant Kagler maintained a fiduciary

duty to the state and its citizens to perform his duties as Deputy Commissioner honestly and

faithfully.

104.     However, defendant Kagler was also acting as an agent for Ronald Hayhurst and

Hayhurst Companies.

105.     Defendants Hayhurst and Kagler devised a scheme to defraud owners of their property in

Marshall County.

106.     Thus, Deputy Kagler, in addition to the acts heretofore alleged, during the same period of

time and as a part of the scheme but while acting within the scope of his employment,

instructed Marshall County employees to exonerate all records of taxes owed by defendant

Hayhurst Company.

107.     Exoneration occurs for erroneous assessment and requires approval not only from the

Marshall County assessor, but the Marshall County prosecutor's office as well.

108.     However, as a part of the scheme, Defendant Kagler, as agent for the Hayhurst

defendants and while employed as Deputy Commissioner had appropriate tax assessment and

delinquency for approximately 600 properties owned by Hayhurst Company exonerated from

the Marshall County records because he was also a Deputy Prosecutor in Marshall County.

109.     Likewise, defendant Kagler while Deputy Commissioner, but as a part of the scheme

with defendants Hayhurst, attempted to have the Marshall County Commission employees

remove the names of the owners of property sold at the tax sales in 2003.

110.     Defendant Kagler while Deputy Commissioner and acting on behalf and to the benefit of defendants Hayhurst, was scheming to replace land owner names with the Hayhurst Company after the sale and before the expiration during the redemption period.

111.     Upon information and belief, defendants Hayhurst, Hayhurst Company and Kagler schemed to put Hayhurst Company's name on the record prior to the expiration of the redemption period in order that the Hayhurst defendants, and not the true owners, would receive the notice sale.

112.     During this same period of time while acting in his capacity as a fiduciary of the plaintiff and all Marshall County residents, defendant Kagler, in furtherance of the defendants scheme to defraud Marshall County property owners, identified plaintiff's property interests as taxable in order to sell these property interests at a tax sale to defendant Hayhurst Company.

113.     Defendant Kagler was acting in a duel capacity which creates a conflict of interest, a breach of fiduciary duty to the plaintiff and which is prohibited by Chapter 11A and the West Virginia Rules of Professional Conduct.

114.     Defendant Kagler maintained these conflicting interests and positions during the time in which he was being investigated by the West Virginia Lawyer Disciplinary Board for breach of fiduciary duties.

115.     Upon information and belief, the plaintiff's property interests were not certified from the State Auditor's office as required by law.  W. Va. Code §11A-3-44.

116.     The sale of at least some of the plaintiff's property interests were sold in February 2003 which is prior to the time that certification is received from the State Auditor's office in May or too long after certification by the State Auditor's office the previous October.

117.    Defendants Kagler and the Hayhurst defendants conspired together to identify property interests to be sold to Hayhurst Company without notice in order to allow the Hayhurst defendants to purchase them at tax auction for a miniscule amount.

118.    Upon information and belief, Defendant Kagler caused the Marshall County records to be altered to eliminate Hayhurst Company's tax delinquencies in order to secure approval of the sales of plaintiff's property interests by the State Auditor's office.

119.    Defendants Kagler, Ronald Hayhurst and Hayhurst Company engaged in this conspiracy to defraud Marshall County property owners out of their interests because it had become known in the industry that the land and mineral rights situate in Marshall County would substantially increase in value over the next few years due to the discovery of vast deposits of Marcellus shale.

120.    The values have risen dramatically as anticipated by the defendants vesting them with millions of dollars' worth of mineral interests taken from plaintiff with no notice to him and paying virtually nothing to Marshall County therefore.

121.    Upon information and belief, the plaintiff is not the only resident of Marshall County who has been damaged by the plaintiff's scheme.

122.    The defendants, Kagler, Ronald Hayhurst and the Hayhurst Company used the United States postal system in order to carry out their scheme to defraud by delivering false and incomplete information to each other and the State Auditor in furtherance of the scheme.

123.    The defendants' scheme to defraud is one that is contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play, and right dealing.

124.     The defendants breached their fiduciary duty to the plaintiff of honest services, violated the notice provisions under Chapter 11A and denied the plaintiff his due process protection under federal law.

125.     Defendant Kagler and the Hayhurst defendants, as state actors who devised a scheme to defraud the plaintiff and sell his property by failing to provide notice and by altering the County records and who carried out their scheme as heretofore alleged, are guilty of mail fraud under the provisions contained in 18 U.S.C. §1341.

126.     Because of the egregious nature of the undisputed facts contained in this complaint which establish the defendant's scheme to defraud, the plaintiff is entitled to damages set forth in 18 U.S.C. §1988.

## COUNT THREE: Wire Fraud

127.     The Plaintiff realleges and reaffirms the allegations contained in paragraphs (1) through (126) as if the same were set forth verbatim herein.

128.     The defendants represented, transmitted or caused to be transmitted communications and writings by wire in interstate commerce in order to carry out their scheme to defraud by delivering false and incomplete information to one another and the State Auditor in furtherance of the scheme.

129.     The defendants breached their fiduciary duty to the plaintiff of honest services, violated the notice provisions under Chapter 11A and denied the plaintiff his due process protection under federal law.

130.     Defendants Kagler, Ronald Hayhurst and Hayhurst Company, as state actors who devised a scheme to defraud the plaintiff and sell his property by failing to provide notice and by

altering the County records and who carried out their scheme as heretofore alleged, are guilty of mail fraud under the provisions contained in 18 U.S.C. §1343.

131.    Because of the egregious nature of the undisputed facts contained in this complaint which establish the defendant's scheme to defraud, the plaintiff is entitled to damages set forth in 18 U.S.C. §1988.

## COUNT FOUR:  Conspiracy

132.    The Plaintiff realleges and reaffirms the allegations contained in paragraphs (1) through (132) as if the same were set forth verbatim herein.

133.    The defendant's actions establish that they engaged in a conspiracy to defraud the plaintiff.

134.    The defendants breached their fiduciary duty to the plaintiff of honest services, violated the notice provisions under Chapter 11A and denied the plaintiff his due process protection under federal law.

135.    Both defendants had knowledge of that their actions would result in taking the plaintiffs property without notice.

136.    Notwithstanding the egregiousness of their scheme to defraud and their knowledge of the harm they were creating, the defendants nevertheless undertook actions which resulted in defrauding the plaintiff of his property interests.

## COUNT FIVE:  Racketeering.

137.    The Plaintiff realleges and reaffirms the allegations contained in paragraphs (1) through (134) as if the same were set forth verbatim herein.

138.    The defendant's actions constitute racketeering activity under the provisions contained in section 1962 of Chapter 18 of the United States Code.

139.    The defendants derived income and property from a pattern of racketeering activity by participating as principals in the scheme to defraud the land owners of Marshall County, West Virginia. *See* 18 U.S.C. §1962.

140.    The property and income derived from the scheme to defraud through mail and wire fraud is in furtherance of an enterprise engaged in interstate commerce for buying, producing and selling gas and oil. *Id.*

141.    Defendant Kagler continues to maintain that he is a "real estate title consultant."

142.    Defendants Hayhurst continue to be engaged in the business of acquiring land and minerals through the various partnerships and corporations established by Ronald Hayhurst and his family members, both in West Virginia and in Florida.

143.    Upon information and belief, defendants Hayhurst and Kagler continue to engage in the activities pursuant to their scheme to defraud by taking property without notice of unsuspecting Marshall County residents.

144.    Because the plaintiff was injured in his property by reason of violations of section 1962, the plaintiff is entitled to three-fold damages, the cost of this suit and reasonable attorney fees.

### COUNT FIVE:  Negligence.

145.    The Plaintiff realleges and reaffirms the allegations contained in paragraphs one (1) through (144) as if the same were set forth verbatim herein.

146.    Pursuant to Article 14 of the United States Constitution, the State of West Virginia maintains a constitutionally established duty to provide the plaintiff with at the very least, procedural due process protection.

147.    The State of West Virginia annulled defendant's Kagler's license to practice law for breach of fiduciary duties and as such, knew or should have known that none of the work conducted by defendant Kagler was trustworthy or reliable.

148.    The State of West Virginia knew or should have known that defendant Kagler had caused to be exonerated 600 tax assessments/delinquencies during the period which all of the plaintiff's property interests were sold to the Hayhurst defendants.

149.    Nevertheless, State Auditor Rollyson acting within the scope of his employment as Marshall County Deputy Commissioner on behalf of and as agent of the State of West Virginia, relied on the actions of defendant Kagler despite the revelation of unprofessional conduct and fiduciary indiscretions and the annulment of his law license by the State of West Virginia, and issued deeds to Hayhurst Company for the property rights identified and/or sold by Deputy Kagler to defendant Hayhurst.

150.    Because the State knew or should have known that defendant Kagler's actions as Deputy Commissioner were not trustworthy and therefore unreliable, the state of West Virginia, by and through its State Auditor, Deputy Rollyson, should not have issued deeds in any land transaction in which defendant Kagler was/is involved.

151.    By issuing deeds in spite of the actual knowledge of defendant Kagler's other fiduciary improprieties, the State breached its duty to the plaintiff to provide him due process protection.

152.    Upon information and belief, the State has harmed other citizens of the state by providing deeds for tax sales in which defendant Kagler was/is involved.

153.    The State's breach of duty directly and proximately contributed to the damage suffered by the plaintiff.

154.   The State's breach of duty directly and proximately contributed to the success of defendants Hayhurst and Kagler's scheme to defraud.

155.   The State's breach of duty directly and proximately contributed to the defendants Hayhurst and Kagler's mail and wire fraud.

156.   The State's breach of duty directly and proximately contributed, and upon information and belief, continues to contribute to the success of defendants Hayhurst and Kagler's racketeering.

WHEREFORE, the plaintiff prays that this honorable Court find in his favor and grant him all relief to which he is entitled pursuant to law; that plaintiff's property be returned to him; that plaintiff be awarded his damages in the amount of Sixteen Million Dollars which represents threefold the current average market value of the property taken; that plaintiff be awarded reasonable attorney fees and the costs incurred for prosecution of this action, including expert fees; that plaintiff be awarded prejudgment and post judgment interest together with all such other relief that this Court deems proper.

Respectfully submitted, this 11th day of March, 2014.

Jenny A. Bonham, Counsel for the plaintiff, Harry W. Moore

State Bar ID No.: 5567

Jenny A. Bonham
H.C. 74 Box 266
Hinton, West Virginia 25951
jbonhamlaw@aol.com
(681) 238-5254