**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**


**HARRY W. MOORE, SR.,**

       Plaintiff,

**v.**                                      **Civil Action No. 5:14-CV-33**
                                                 **(BAILEY)**


**ROBERT W. KAGLER,** personally and as Deputy
Commissioner of Delinquent and Non-Entered
Lands of Marshall County, West Virginia,
**MARSHALL COUNTY COMMISSION,** a political subdivision,[1]
**HAYHURST COMPANY,** a Florida Partnership,
**RONALD HAYHURST,** personally and as President
of Hayhurst Company and President of
Chestnut Holdings, Inc., a Florida holding
company; **CHESTNUT HOLDINGS, INC.,** a Florida
holding company, and the **STATE OF WEST VIRGINIA,**

       Defendants.


**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANTS' MOTIONS TO DISMISS**

      Currently pending before this Court is Defendant Robert W. Kagler's Motion to

Dismiss Amended Complaint [Doc. 31] and the Motion of Defendants Hayhurst Company,

Ronald Hayhurst, and Chestnut Holdings, Inc. to Dismiss Amended Complaint Pursuant

to Rule 12(b)(6) [Doc. 33]. The parties filed their respective responses and replies, and this

---

[1] On May 29, 2014, plaintiff filed a Notice of Dismissal of the Marshall County
Commission pursuant to Fed. R. Civ. P. 41(a)(1). See Doc. 13.

matter is now ripe for decision. For the reasons set out below, this Court **DENIES** the Motions to Dismiss **[Docs. 31 & 33]**.

## BACKGROUND

**I.    Factual Allegations**

The Amended Complaint [Doc. 30] contains the following allegations. In 1965, Everett F. Moore passed away, and his estate was devised according to his will, which left the residual to his five nieces and nephews, including plaintiff Harry W. Moore. (Id. at ¶¶ 23-24). The nieces and nephews were each bequeathed 1/5 interests in several realty and mineral right interests. (Id. at ¶ 25). The heirs each conveyed their respective 1/5 interests to plaintiff Harry Moore at various times in 1997, 1998, and 2004. (Id. at ¶¶ 27-29). Each deed was recorded in the office of the Marshall County Commission. (Id.).

The plaintiff alleges that no taxes were assessed to the property, yet the parcels of land were identified as delinquent on taxes. (Id. at ¶ 34). Neither Marshall County through defendant Robert W. Kagler, Deputy Commissioner of Delinquent and Non-entered Lands of Marshall County, nor the Sheriff provided notice of delinquency to the plaintiff. (Id. at ¶ 35).

A tax lien was placed on one of the plaintiff's properties, and at some point thereafter, Tri-County Oil & Gas acquired the same. (Id. at ¶ 37). Subsequently, either defendant Kagler or the Sheriff published notice of one right of redemption for one of the properties in the *Moundsville Echo* newspaper, and plaintiff Moore redeemed this property for approximately $2,000.00. (Id. at ¶¶ 38-39).

Ten other of the plaintiff's interests in various real property or oil and gas rights, which are listed in the Amended Complaint, were assessed a nominal tax. (Id. at ¶ 45 A-J). Plaintiff did not receive a tax bill, and therefore, the taxes went unpaid, and tax liens were placed on the subject properties. (Id. at ¶ 48). Subsequently, the interests were purchased by the Hayhurst defendants. The plaintiff alleges that the tax liens sold by defendant Kagler were never placed on the assessor's land book, and tax tickets were never issued. (Id.). Plaintiff further alleges that when the deed was first recorded in 1997, defendant Kagler, in concurrence with the Hayhurst defendants, undertook actions to avoid placement on the assessor's land book for taxation in order to allow five years to pass. (Id. at ¶ 49). The five years' delinquency provided the basis for defendant Kagler to have the property assessed and sold. (Id. at ¶ 50). No notice of the assessment or delinquency was provided to the plaintiff or otherwise published in the newspaper. (Id. at ¶ 51). Rather, notices of the right to redeem the properties from sale were delivered to Edward Moore, one of the five heirs who conveyed his interest to Harry Moore in 1997. (Id. at ¶ 74). Plaintiff alleges he became aware that his property had been sold in late May or early June 2013, when he expressed interest in selling it. (Id. at ¶¶ 77-78).

Plaintiff alleges defendant Kagler was acting as an agent for the Hayhurst defendants while working in his capacity as Deputy Commissioner as well as after his employment with the Commission ended. (Id. at ¶¶ 114-115). Plaintiff alleges that during this time, Deputy Kagler instructed Marshall County employees to exonerate all records of taxes owed by defendant Hayhurst Company. (Id. at ¶¶ 117-118). Exoneration requires approval from the prosecutor's office, where defendant was also employed as an Assistant Prosecuting Attorney. (Id. at ¶ 119). As part of the scheme alleged, Kagler, acting on

behalf of himself and the Hayhurst defendants, replaced land owners' names with the Hayhurst Company after the sale and before the expiration of the redemption period. (Id. at ¶ 122). Such would result in the Hayhurst defendants receiving the notice of sale rather than the true owners. (Id. at ¶ 123).

## II.    Procedural History

The plaintiff initiated this case in this Court on March 11, 2014 [Doc. 1]. Plaintiff filed his Amended Complaint [Doc. 30] on June 13, 2014, alleging violations of Fourteenth Amendment Due Process (Count I); Racketeering (Count II); Conspiracy (Count III); Fraud (Count IV); and Negligence (Count V).

The defendants have moved to dismiss the entire Amended Complaint. See Doc. 33. Defendants assert that this action is barred by the applicable statutes of limitation; that defendant Kagler is protected in his official capacity by the Eleventh Amendment as well as qualified immunity; and there exists no private cause of action for violations of 18 U.S.C. §§ 1341 and 1343. See Doc. 31.

## LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' ***Bell Atl. Corp. v. Twombly***, 127 S.Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most

favorable to the plaintiffs. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," ***id***. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." ***Id***. at 1974.

## DISCUSSION

A.    Statute of Limitations

The parties agree that the under ***Dunn v. Rockwell***, 225 W. Va. 43, 689 S.E.2d 225 (2009), this Court must apply a five-step analysis to determine whether an action such as this is time-barred. In ***Dunn***, the Supreme Court of Appeals stated:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have

known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Dunn*, at Syl. Pt. 5.

I.    Tolling by the Discovery Rule

"Generally, the statute of limitations begins to run when a tort occurs; however, under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." *Gaither*, 199 W. Va. at 711, 487 S.E.2d at 906.  The discovery rule recognizes "the inherent unfairness of barring a claim when a party's cause of action could not have been recognized until after the ordinarily applicable period of limitation." *Harris v. Jones*, 209 W. Va. 557, 562, 550 S.E.2d 93, 98 (2001).  The discovery rule is "generally applicable to all torts, unless there is a clear statutory prohibition of its application."  Syl. Pt. 2, *Cart v. Marcum*, 188 W. Va. 241, 423 S.E.2d 644 (1992).

Thus, "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syl. Pt. 4, *Gaither*, 199 W. Va. 706, 487 S.E.2d 901. Further, "whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Dunn*, 225 W. Va. at 53, 689 S.E.2d at 265.

Importantly, the *Dunn* Court stressed that "only the first step is a question of law for resolution by the trial court. The remaining steps generally involve mixed question of law and fact, and the trial court is required to analyze mixed questions of law and fact (such as those raised in the present case) in order to determine 'whether there is . . . [a] genuine issue of fact to be tried and inquiry concerning the facts is . . . desirable to clarify the application of the law.' Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). When the resolution of a step requires resolution of a genuine issue of material fact, the issue should be submitted to the finder of fact." *Dunn*, 225 W. Va. at 53, 689 S.E.2d at 265.

This Court notes that the parties generally agree as to the applicable statutes of limitation governing the various claims and that each period has run, unless the same has been tolled. Such tolling is the subject of the instant dispute.

The West Virginia Legislature has provided a statutory scheme that enables the state's counties to foreclose on property for which those obligated to pay taxes on the property have failed to do so. See § 11A-3-1, *et seq.* Its purposes include, among others, "to permit deputy commissioners of delinquent and nonentered lands to sell such lands" and "to secure adequate notice to owners of delinquent and nonentered property of the pending issuance of a tax deed." See Id.

Accordingly, when taxes are delinquent, and other statutory means of selling the property have failed, the deputy commissioner "may sell such lands . . . to any party willing to purchase such property." § 11A-3-48. Within two weeks following the transaction, the deputy commissioner must report the sale to the state auditor, whose approval is then required. § 11A-3-51. If the sale is approved, before receiving a deed to the property, the purchaser, within 45 days of approval, must "[p]repare a list of those to be served with notice to redeem and request the deputy commissioner to prepare and serve the notice." § 11A-3-52.

Those entitled to notice to redeem, but who were not properly served with the requisite notice, may bring a civil action to set aside a tax deed within three years of its delivery to the grantee. § 11A-4-4(a). However,

[n]o title acquired pursuant to this article shall be set aside in the absence of a showing by clear and convincing evidence that the person who originally acquired such title failed to exercise *reasonably diligent* efforts to provide notice of his intention to acquire such title to the complaining party or his predecessors in title.

§ 11A-4-4(b) (emphasis added).

8

Section 11A-3-22 provides in relevant part:

As soon as the clerk has prepared the notice . . ., he shall cause it to be served upon all persons named on the list generated by the purchaser . . .

. . . .

If the address of any person entitled to notice . . . is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, the notice shall be served by publication . . ..

These statutes require a purchaser to exercise due diligence in identifying and locating parties entitled to notice and to allow publication notice only after the exercise of such diligence. Such statutory notice requirements parallel the requirements of the United States Constitution. *See **Plemons v. Gale***, 396 F.3d 569 (4th Cir. 2005). The Constitution only requires due process when the state or federal government works the deprivation of property. Appropriately, neither party disputes that the tax-sale procedure in this case constitutes state action, although state law charges a private party with providing notice. Under West Virginia's statutory scheme, the State is the initial seller of the tax lien; thereafter, the State provides the tax lien purchaser with the mechanism to provide notice to interested parties. The State also extinguishes the owner's rights to the property by issuing the tax deed to the property. In order to accomplish a tax sale, then, private parties must "make use of state procedures with the overt, significant assistance of state officials," and, thus, there is state action. ***Tulsa Prof'l Collection Servs., Inc. v. Pope***, 485 U.S. 478, 486 (1998).

The Supreme Court has set forth the requirements for constitutionally adequate

9

notice of an impending deprivation of property. "[I]n any proceeding which is to be accorded finality," due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***Mullane v. Central Hanover Bank & Trust Co.***, 339 U.S. 306, 314 (1950).

In their Reply [Doc. 45], the Hayhurst defendants argue that notices of the right to redeem the properties from sale were "transmitted to the taxpayers" by G. Russell Rollyson, Jr., Deputy Commissioner of Forfeited and Nonentered Lands of Marshall County. The defendants attach these notices to their Motion to Dismiss [Doc. 33] as Exhibits A-D. Defendants further argue that each of these notices have attached thereto the return receipt cards signed by the recipients. Id.

The defendants' statements are misleading at best. This Court has reviewed the notices, and it is apparent that they were not sent to plaintiff Harry Moore, but rather Edward Moore. This Court is at a loss as to how the defendants think they can successfully argue that service upon a previous 1/5 owner is sufficient to put the plaintiff, Harry Moore, on notice of his right to redeem. As stated in ***Plemons v. Gale***, 396 F.3d 569, 576 (4th Cir. 2005), "reasonable efforts to mail notice *to one threatened with loss of property* will normally satisfy the requirements of due process." (Emphasis added). In this case, the party who lost his property was not the person to whom notice was mailed.

Cases following ***Mullane*** have sharpened its rule, but reasonable efforts designed to "actually inform[ ]" a party with a property interest of possible deprivation of that interest remain the touchstone of constitutionally adequate notice. *Id*. at 315. Thus, although the

Constitution does not always require actual receipt of notice, it does always require efforts "reasonably calculated under all the circumstances to apprise" a party "of the pendency" of the deprivation of property. *Dusenbery v. United States*, 534 U.S. 161, 168-171 (2002). When a party required to give notice knows that a mailed notice has, for some reason, failed to inform a person holding a property interest of the impending deprivation, the notice does not pass constitutional muster. *See Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (holding notice of forfeiture sent to address State knew to be inaccurate or defective insufficient); *Covey v. Town of Somers*, 351 U.S. 141, 146-47 (1956) (holding notice mailed to taxpayer known to be incompetent insufficient to afford her notice). Of course, "consideration should be given to the practicalities of the situation" in each case. *Tulsa Prof'l Collection Servs.*, 485 U.S. at 489-90. However, "actual notice is a minimum constitutional pre-condition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id.* at 485 (internal quotation marks and citation omitted). For this reason, the Court has held that even a state's "legitimate interest in expeditious resolution" of probate proceedings does not justify the failure to mail notice of a "nonclaim" probate proceeding to a creditor when the identity of the creditor was "reasonably ascertainable" through "reasonably diligent efforts." *Id.* at 489, 491.

In 1983, the Court considered application of these principles in the context of a tax sale, specifically, whether "constructive notice by publication" to a mortgagee sufficed to inform the mortgagee of a pending tax sale of property in which it had an interest. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983). The Court held that

when the identity and location of a mortgagee can be obtained through examination of public records, "constructive notice alone does not satisfy the mandate of **Mullane**." **Id**. Moreover, "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." **Id**. at 799. Although a party required to provide notice need not "undertake extraordinary efforts to discover . . . whereabouts . . . not in the public record," it must use "reasonably diligent efforts" to discover addresses that are reasonably ascertainable. See **id**. at 798 & n. 4. In sum, **Mullane** and its progeny teach that a party charged with giving notice must be reasonably diligent in doing so. In the case of a tax sale of property, diligence requires that reasonable efforts be made to identify and locate parties with an interest in the property. Once those parties are located, they must be provided notice of the impending sale using a method reasonably calculated, under all of the circumstances, to actually inform them of the sale.

In recognition of these basic due process requirements, the West Virginia Legislature has specifically enacted certain notice requirements at § 11A-3-1, *et seq*. Indeed, the West Virginia Supreme Court of Appeals noted the dual purposes of this statutory framework in **Wells Fargo Bank, N. A. v. UP Ventures II, LLC**, 223 W. Va. 407, 410, 675 S.E.2d 883, 886 (2009):

> The Legislature contemplated property owners' due process rights when enacting West Virginia's statutory tax scheme and sought to balance the due process rights of property owners with the need to find a cost effective, speedy means of conducting tax sales. The Legislature also sought to ensure that property owners and lienholders of record would be provided

adequate notice of a property sale.

In this case, the allegations contained in the Amended Complaint [Doc. 30] establish that the defendants fall woefully short of meeting such diligence; rather, they appear to have been in complete dereliction of their duties. Indeed, the allegations of misconduct go further, giving rise to a claim for fraud. At this point in the proceedings, the only real evidence the defendants have produced are the notices of the right to redeem sent to Edward Moore, which this Court finds deficient. Additionally, defendants fail to show any sort of publication of such delinquencies or right to redeem which were made in accordance with West Virginia's statutory scheme regarding the sale of tax liens.

Defendants argue, however, that the plaintiff failed to exercise reasonable diligence and should have known of the delinquencies because either defendant Kagler or the Sheriff published notice of the right of redemption for *one* of the properties in the *Moundsville Echo* newspaper, and plaintiff Moore redeemed this property for approximately $2,000.00. (Id. at ¶¶ 38-39). Therefore, defendants conclude that because taxes were delinquent on one of his properties, plaintiff should have inquired as to whether all ten other properties were delinquent. This Court is not willing to make this same leap, but will properly leave such factual determination to the province of the jury. It seems equally plausible that a jury could find a reasonably prudent person could believe that if notice was published for one delinquent property, then notice would be published for the others. Accordingly, this Court finds the Amended Complaint sets forth facts sufficient to toll the applicable statute of limitations at this time. Accordingly, the Motion to Dismiss on this ground is **DENIED**.

II.     Tolling for Fraudulent Concealment

Although the plaintiff has alleged sufficient facts to satisfy tolling under the discovery

rule at step three of the *Dunn* analysis, plaintiff also asserts fraudulent concealment as contemplated at step four. The defendants assert the plaintiff has failed to plead sufficient facts that defendant Kagler fraudulently concealed the existence of a cause of action to deter plaintiff from filing suit within the applicable statutes of limitation. Defendant cites to *Highmark West Virginia, Inc. v. Jamie*, 221 W. Va. 487, 493, 655 S.E.2d 509, 515 (2007), for the proposition that "[a] pleading which includes a claim of fraud requires more than the short, plain statement of the claim contemplated under Rule 8(a)(1). As Rule 9(b) of the West Virginia Rules of Civil Procedure provides, in part: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" 221 W. Va. at 493 (citing *Kessel v. Leavitt*, 204 W. Va. 95, 132, 511 S.E.2d 720, 757 (1998), *cert. denied*, 525 U.S. 1142 (1999)). The Fourth Circuit has held that, under Rule 9(b), a claim for fraud must state "the time, place, and contents of the false representations as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Company*, 176 F.3d 776, 784 (4th Cir. 1999) (requiring more notice than required under Rule 8, so that the defendant can prepare an adequate answer).

"The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." *Bowling v. Ansted Chrysler-Plymouth-Dodge*, 188 W. Va. 468, 472, 425 S.E.2d 144, 148 (1992) (internal citations and quotations omitted). Further, based upon a duty to disclose, "an action for fraud can arise by the

concealment of truth." *Teter v. Old Colony*, 190 W. Va. 711, 717, 441 S.E.2d 728, 734 (1994) (internal citations and quotations omitted).

The defendants argue that plaintiff's statements that he is "unaware who actually conducted the search of the records on behalf of Hayhurst Company, but believes it could be defendant Kagler" and that "defendant Kagler was paid by Hayhurst Company for his part in the scheme to defraud plaintiff of his property," (see Doc. 30), are mere labels and conclusions that do not meet the heightened pleading standard for fraud. See Doc. 46 at 5.

This Court finds the Amended Complaint provides a description of the time, place, identity, and manner in which the alleged fraudulent activity occurred in sufficient detail to put the defendants on notice of the plaintiff's fraud claims and to allow them to answer. For the same reasons, this Court also finds the statutes of limitation should be tolled.

The Amended Complaint alleges plaintiff Moore placed his ownership of the various property and/or oil and gas interests sold by defendant Kagler on the land books as early as 1997, and again in 1998. [Doc. 30 at ¶¶ 27, 28]. Pursuant to § 11-4-8, the county clerk is to report title change to the county assessor who then adds the same to his land book, noting the owner of the property, the nature and character of the ownership, and its location. Therefore, plaintiff Moore's ownership should have been known and placed on the land books for taxation no later than 1997, and Moore should have been receiving tax tickets in his name no later than 1998. Id. Moore did not receive tax tickets. No notice was sent to him despite his name and address appearing on the land books and defendant Kagler's alleged personal knowledge of plaintiff Moore's ownership of the subject properties. No publication of the sale occurred. No notice of the right to redeem was sent

to plaintiff Moore. The plaintiff alleges that all the above was part of a conspiracy to defraud plaintiff Moore of his property interests. Thus, it appears to this Court that the when, where, why and how are sufficiently pled insofar as the plaintiff has such information in his possession. This Court finds the Amended Complaint certainly makes the defendants "aware of the particular circumstances for which [the defendants] will have to prepare a defense at trial . . .." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d at 784. Accordingly, this Court finds sufficient allegations have been made to state a claim of fraud and to toll the statutes of limitation for the defendants' alleged fraudulent concealment. <u>B. Official Capacity Claims under Section 1983</u>

Next, the defendant moves to dismiss the official capacity claims against Kagler in his capacity as Deputy Commissioner of Delinquent and Non-Entered Lands of Marshall County, West Virginia. It is clear, and the parties do not dispute, that defendant Kagler was an official of the State of West Virginia. Defendants argue, therefore, that "State officials sued in their official capacities, are not a 'person' subject to suit pursuant to 42 U.S.C. § 1983." See Doc. 32 at 6.

As for sovereign immunity, the Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). Thus, as a general proposition, the doctrine of sovereign immunity bars suit against a state. However, the Supreme Court has articulated three narrow exceptions. First, a state can waive its immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985)

("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). Second, Congress may, in particular circumstances, abrogate a state's immunity. *See **Fitzpatrick v. Bitzer***, 427 U.S. 445 (1976) (holding that Congress can make states liable to suit in federal court pursuant to statutes adopted under § 5 of the Fourteenth Amendment). Third, a suit may proceed against a state as long as it is directed at a state official and requests prospective relief. *See **Ex parte Young***, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law).

Defendants' argument fails because the Amended Complaint seeks injunctive relief under § 1983 and also alleges claims against defendant Kagler in his individual capacity, as discussed above. A lawsuit instituted under § 1983 against state officials in their official capacity is barred by the Eleventh Amendment when it seeks money from the state treasury in the form of damages. *See **Will v. Michigan Dep't of St. Police***, 491 U.S. 58 (1989). However, ***Will*** also makes clear that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" ***Id***. at 71 n.10 (citing ***Kentucky v. Graham***, 473 U.S. at 167, n. 14); ***Ex parte Young***, 209 U.S. 123, 159-160 (1908). Moreover, suits for damages against state officials sued in their individual capacity are not barred. *See **Hafer v. Melo***, 502 U.S. 21 (1991); ***Goodman v. Rockefeller***, 947 F.2d 1186, 1187 (4th Cir. 1991). Defendants' argument that plaintiff's Amended Complaint should be dismissed because the defendant is entitled to immunity under the Eleventh Amendment is based on an incorrect and incomplete reading of §1983

17

case law.  The Eleventh Amendment only bars a § 1983 suit based on monetary damages against state officials when sued in their official capacity.  Accordingly, because the Eleventh Amendment does not bar plaintiff's § 1983 claims for prospective injunctive relief or plaintiff's claims for damages against defendant Kagler in his individual capacity, Defendant's Motion to Dismiss on this ground must be **DENIED**.

Defendants also cite ***Pittsburgh Elevator Co. v. W. Va. Board of Regents***, 172 W. Va. 743, 744, 310 S.E.2d 675, 676 (1983), which requires a plaintiff suing a state agency, in order to circumvent immunity of the agency, to allege that recovery is sought not from state funds, but from the State's liability insurance coverage.  Plaintiff has done so.  In his Amended Complaint, the plaintiff specifically states that "[t]he State of West Virginia maintains a One Million Dollar ($1,000,000.00) liability insurance policy for the purpose of paying damages caused by torts committed by the state and its officers" and "[t]he plaintiff seeks damages up to the amount of liability coverage for the torts committed by the State and its officers through insurance and bonding," which "bond was executed for defendant Kagler for his duties as Deputy Commissioner."  See Doc. 30 at ¶¶ 167-169.  Therefore, insofar as the plaintiff seeks recovery from the State's liability insurance, such claims may proceed.

C.    Qualified Immunity

The United States Supreme Court "'ha[s] repeatedly [ ] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'  ***Hunter v. Bryant***, 502 U.S. 224, 227, 112 S. Ct. 534 (1991) (per curiam)."  ***Pearson v. Callahan***, 555 U.S. 223, 232 (2009).  Additionally, the "'driving force' behind creation of the qualified immunity

doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.' **Anderson v. Creighton**, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034." **Id**. This Court notes that immunity is a defense to an otherwise viable claim and not an indictment of the underlying claim's viability. **Gomez v. Toledo**, 446 U.S. 635, 640 (1980) (stating that "this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question")).

The test for qualified immunity was announced by the Supreme Court in **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982):

> Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The qualified immunity test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. **Harlow**, 457 U.S. at 818-19. Courts look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. **Id**. *See also*, **Swint v. City of Wadley, Ala.**, 51 F.3d 988, 995 (11th Cir. 1995). "Thus, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" **Id**. (quoting **Courson v. McMillian**, 939 F.2d 1479, 1487 (11th Cir. 1991)), in turn quoting **Malley v. Briggs**, 475 U.S. 335, 341 (1986). Furthermore, the contours of a right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. **Id**.

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). The Supreme Court has held that a right can be deemed "clearly established" even if there is no prior decision addressing the precise conduct at issue, so long as its illegality would have been evident to a reasonable officer based on existing case law. *See Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692 (1999); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987) (stating that the precise conduct at issue need not have been held illegal for a right to be clearly established; instead, the particularity inquiry looks to whether "in the light of pre-existing law the unlawfulness [was] apparent"); cf. *United States v. Lanier*, 520 U.S. 259, 270-71, 117 S. Ct. 1219 (1997).

Officers, however, are not afforded protection when they are "plainly incompetent or . . . knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986). But, in gray areas, where the law is unsettled, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden even if the action is later deemed wrongful. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The Fourth Circuit explains,

> The Court first articulated the objective reasonableness test for qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Again in *Anderson v.*

20

> *Creighton*, 483 U.S. 635, 641 (1987), the Court admonished parties not to
> "reintroduce into qualified immunity analysis the inquiry into officials'
> subjective intent that *Harlow* sought to minimize."  And more recently, in
> *Graham v. Connor*, 490 U.S. 386, 397 (1989), the Court declared that "[a]n
> officer's evil intentions will not make a Fourth Amendment violation out of an
> objectively reasonable use of force; nor will an officer's good intentions make
> an objectively unreasonable use of force constitutional.

*Ross v. Helton*, 92 F.3d 1181 at *2 (4th Cir. 1996).

As stated above, the Amended Complaint sets forth specific allegations that defendant Kagler's actions were incompetent, in violation of the law and maliciously undertaken by him in bad faith by failing to provide notice of the tax lien sales on plaintiff's property interests, by failing to correct the list of persons entitled to redeem and send direct notice to the plaintiff when armed with the knowledge that the plaintiff was the true owner, and by failing to publish such notices.  This Court finds such allegations sufficient to withstand qualified immunity.

D.    Conspiracy

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.  The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."  Syl. Pt. 8, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

"A civil conspiracy is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual

perpetrator(s)." Syl. Pt. 9, *Id.*

In *Roush v. Roush*, 767 F.Supp. 1344, 1351 (S.D. W.Va. 1991), Chief Judge Haden quoted the following passage from *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975):

> Even if we were to assume . . . that the "in concert" allegation was sufficiently specific to support a claim of conspiracy, there still must be some basis more than mere conclusory allegations that there was an agreement under color of state law to violate the plaintiff's constitutional rights, privileges or immunities.

767 F.Supp. at 1351, quoting 523 F.2d at 878-79.

Chief Judge Haden further cited *Martin v. Supreme Ct. of N.Y.*, 644 F.Supp. 1537, 1544 (N.D. N.Y. 1986), in which the Court stated "an assertion of a conspiracy in a § 1983 action must be pleaded with specificity."

This Court will not rehash all the allegations which form the basis of the alleged conspiracy. This Court does find, however, that the plaintiff has alleged facts with such specificity to survive a motion to dismiss. Accordingly, that portion of the defendants' motion is **DENIED**.

E.    Racketeering

Defendants move to dismiss the claims for mail and wire fraud under 18 U.S.C. § 1341 and § 1343, arguing that there exists no individual causes of action under those sections. The plaintiff responds that he has not asserted causes of action for wire and mail fraud, but rather racketeering.

(1) "[R]acketeering activity" means (A) any act or threat involving … section

1341 (relating to mail fraud), section 1343 (relating to wire fraud) … section

1951 (relating to interference with commerce, robbery, or extortion), section

1952 (relating to racketeering), … section 1957 (relating to engaging in

monetary transactions in property derived from specified unlawful activity),

….

18 U.S.C. §1961(1)(A) (2013).

(3) "person includes any individual or entity capable of holding a legal or

beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals associated in fact

although not a legal entity;

(5) "Pattern of racketeering activity" requires at least two acts of racketeering

activity, one of which occurred after the effective date of this chapter and the

last of which occurred within ten years (excluding any period of

imprisonment) after the commission of a prior act of racketeering activity . .

..

18 U.S.C. §1961(2)-(5).

In order to recover for a civil RICO claim, a plaintiff must show (1) the defendant

violated 18 U.S.C. § 1962; (2) the plaintiff has suffered injury to business or property; and

(3) the defendant's violation of the RICO statute was the proximate cause of the injury.

***Brandenburg v. Seidel***, 859 F.2d 1179, 1186 (4th Cir. 1988), *overruled on other grounds*

***Quackenbush v. Allstate Ins. Co.***, 517 U.S. 706, 711, 116 S.Ct. 1712, 135 L.Ed.2d 1

(1996); ***Buchanan County, Virginia v. Blankenship***, 496 F.Supp.2d 715, 718 (W.D. Va.2007). "A private RICO plaintiff only has standing to bring suit if he can show damage to 'business or property' *proximately caused* by the defendant's RICO violation." ***Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.***, 262 F.3d 260, 264 (4th Cir. 2001), *certiorari denied sub nom* ***Electric Motor & Supply, Inc. v. Potomac Elec. Power Co.***, 535 U.S. 927 (2002) (emphasis provided).

Again, this Court will not rehash all the allegations of the Amended Complaint related to this claim. This Court does find, however, that the plaintiff has alleged facts sufficient to show the defendants' actions satisfy the requisite elements to sustain a civil RICO claim. Accordingly, this Court will **DENY** the motion to dismiss this claim.

## CONCLUSION

For the foregoing reasons, Defendant Robert W. Kagler's Motion to Dismiss Amended Complaint **[Doc. 31]** and the Motion of Defendants Hayhurst Company, Ronald Hayhurst, and Chestnut Holdings, Inc. to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) **[Doc. 33]** should be, and hereby are, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 9, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

24